# IN THE UNITED STATES DISTRICT COURT FOR THE

# NORTHERN DISTRICT OF ILLINOIS

Victor Bozzi,

        Plaintiff,

v.

Cook County Sheriff's Office et al.,

        Defendants.

Case No. 22 CV 03238

Honorable Nancy L. Maldonado

## MEMORANDUM OPINION AND ORDER

Plaintiff Victor Bozzi filed this suit against Defendants Cook County Sheriff's Office ("CCSO"), Defendant Rebecca Reierson in her individual capacity, and Defendant Cook County as indemnitor (collectively, "Defendants"). (Dkt. 1 ¶¶ 71–123.) Bozzi alleges that the CCSO has imposed a number of restrictions on his job as a deputy sheriff solely on the basis of his disability. Bozzi brings claims against the CCSO under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, for disparate treatment, failure to accommodate, violation of confidentiality, retaliation, and interference. (*Id.* ¶¶ 71–109.) Bozzi also brings disability discrimination claims against Defendants under 42 U.S.C. § 1983 alleging violations of the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution. (*Id.* ¶¶ 110–23.) Defendants now move to dismiss Bozzi's Complaint in its entirety. (Dkt. 12.) For the reasons stated in this Memorandum Opinion and Order, Defendants' motion to dismiss is denied. By July 26, 2024, the parties should submit a joint status report with a proposed case management schedule,

and the parties should clarify whether they seek to name Sheriff Thomas J. Dart as a defendant, *infra* n.2.

## Background

The Complaint (Dkt. 1)[1] alleges the following facts, which the Court accepts as true for the purpose of considering the instant motion to dismiss. *See Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). Bozzi is a deputy sheriff who has been employed by the CCSO since 1993. (*Id.* ¶ 20.) The CCSO is headed by Sheriff Dart, who Bozzi alleges is the final policymaker and decision-maker in the CCSO. (*Id.* ¶ 8.)[2] Reierson is the Director of Human Resources at the CCSO and is responsible for the ADA and disability accommodation process at the CCSO. (*Id.* ¶¶ 10, 14.) Bozzi alleges that Sheriff Dart delegated final policymaking authority to Reierson, and she is thus a final policymaker and decision-maker for the CCSO. (*Id.* ¶ 12.)

Around 1995, Bozzi was diagnosed with a panic disorder that makes him uncomfortable in confined spaces and crowded areas. (*Id.* ¶ 22.) Bozzi's panic disorder is episodic and when it is active, it substantially limits major life activities such as breathing, swallowing, and sleeping. (*Id.* ¶ 24.) Although Bozzi's doctor has determined that his panic disorder does not impede his ability to handle emergency situations, it can trigger "post-incident anxiety that would be more amplified in intensity and last a longer duration than for those without panic disorder." (*Id.*) Additionally,

---

[1] Page numbers are taken from CM/ECF headers.

[2] Although Defendants in their motion to dismiss state that Thomas J. Dart is a defendant in his official capacity as the Sheriff of Cook County, Bozzi has not named Dart as a defendant in this action. (Dkt. 12.) "Whether a sheriff's office is a legal entity capable of being sued has produced mixed results in this District." *Connelly v. Cook Cnty. Assessor's Off.*, 583 F. Supp. 3d 1142, 1146 (N.D. Ill. 2022) (collecting cases). Defendants should clarify whether they move to substitute Defendant CCSO for Sheriff Thomas J. Dart.

Bozzi's doctor determined that Bozzi's panic disorder could cause him to have difficulty sleeping. (*Id.* ¶ 25.)

Defendants have been aware of Bozzi's disability since his diagnosis in 1995. (*Id.* ¶ 26.) Since June 2006 and after he filed his first EEOC charge, Bozzi has worked with an ADA accommodation. (*Id.* ¶ 26.) As of approximately 2009, the CCSO assigned Bozzi to work at two different security assignments and afternoon shifts at the Rolling Meadows Courthouse as ADA accommodations. (*Id.* ¶ 27.) Bozzi alleges that he has been able to perform the essential functions of his position with these accommodations. (*Id.* ¶ 29.)

In 2017, Reierson informed Bozzi that he was no longer allowed to carry a firearm due to his disability. (*Id.* ¶ 31.) Reierson stated that this policy would apply to all sheriff's deputies working under ADA accommodations. (*Id.* ¶ 33.) Prior to this change, Bozzi had been allowed to carry a firearm from 1994 to 2017. (*Id.* ¶ 30.) Moreover, Bozzi had documentation from his doctor that there was no medical reason keeping him from carrying a firearm. (*Id.* ¶ 31.)

In March of 2019, Reierson told Bozzi that she was rejecting the ADA Request Packet that Bozzi's doctor had completed in October 2018. (*Id.* ¶ 35.) Then, on January 8, 2020, Reierson emailed Bozzi and stated that he must complete a Taleo online job profile with a job resume "to determine if there was a different position for which you were qualified that you could be moved to as a reasonable accommodation." (*Id.* ¶ 36.) Reierson's email included a list of positions, which were labeled, "CCSO – Reasonable Accommodation Work Program – DO NOT APPLY: BY INVITATION ONLY." (*Id.* ¶ 37.) These job positions appear to have been limited to civilian job positions. (*Id.* ¶ 38.) Following the January 2020 email, Bozzi's union complained to Human Resources on Bozzi's behalf and stated that Bozzi was being discriminated against by "being

denied training, advancement, and possibly facing discharge (either constructive or actual) due to the fact that he has a qualified disability under the ADA." (*Id.* ¶ 41.)

The CCSO continued to follow up with Bozzi, repeatedly asking him for information to help place him in a new position. Human Resources emailed Bozzi on February 27, 2020 and March 23, 2020, and Bozzi received a call from Kimberly Pace in Human Resources on May 13, 2020. (*Id.* ¶¶ 42, 44.) Pace told Bozzi that Human Resources was working on finding another position for Bozzi, that they wanted to discuss his skill set and interests, and that they were going to reassign him in about a week or so. (*Id.* ¶ 44.)

On May 29, 2020, Bozzi complained to a Superintendent Mills that he was facing discrimination and that the CCSO was attempting to remove him from his position. (*Id.* ¶ 45.) Mills told Bozzi that the CCSO had created ADA-exclusive positions that were not sworn deputy positions. (*Id.* ¶ 46.) On June 12, 2020, Pace called Bozzi again and questioned Bozzi about his accommodation and whether he has computer skills, even though Bozzi initially told her that he did not feel comfortable discussing his disability while his co-workers were within hearing distance. (*Id.* ¶ 47.)

On July 14, 2020, Bozzi received a memorandum to attend a one-day training on July 22, 2020 for firearms requalification and use of force. (*Id.* ¶ 48.) That same day, Superintendent Mills informed Bozzi's Sergeant that Bozzi and another deputy with ADA accommodations could not bring firearms to the in-service training. (*Id.* ¶ 49.) In response, Bozzi complained again to Superintendent Mills that he was being discriminated against and that he had been cleared to use a firearm by his doctor. (*Id.* ¶ 50.)

On July 21, 2020, Reierson sent Bozzi an email that said, "Recruitment let me know that they contacted you to continue with the reasonable accommodation process. Please be aware that

this is [sic] next step to determine if a position can be found for you as a reasonable accommodation. They will contact you again, and in order to remain in the process it is necessary to cooperate with them regarding scheduling an interview. The assignment you currently have is not a reasonable accommodation, and is not permanent." (*Id.* ¶ 51.) On July 28, 2020, Pace emailed Bozzi once again, writing, "I am reaching out to you in regards to placing you in a position to meet your accommodation." (*Id.* ¶ 53.)

On August 3, 2020, the FOP Labor Union Legal Department advised Bozzi to bring his firearm to in-service training so that he could requalify with it. (*Id.* ¶ 54.) The following day, Bozzi went to in-service training, successfully completed the training, and passed the firearms requalification test. (*Id.* ¶ 55.) After Bozzi received his score, however, an Academy staff member informed him that, according to Human Resources, his score would not be counted because he has ADA accommodations. (*Id.* ¶ 56.) Other deputies were within earshot when the Academy staff member was discussing Bozzi's ADA accommodations. (*Id.*)

On August 13, 2020, Reierson emailed Bozzi and wrote that if he failed to contact her by the next day, his case would be closed, and his current job position would not be available to him after August 31, 2020. (*Id.* ¶ 57.) The FOP Labor Union attorney complained to Reierson on Bozzi's behalf via email and filed a Step 3 grievance, which stated, "Employer is intentionally withholding training and reasonable accommodations to all similarly situated employees by applying a blanket policy with the intent to disqualify Grievant from his current position. Policy is facially discriminatory and in violation of several provisions of the CBA as applied." (*Id.* ¶ 58.) Additionally, Bozzi's attorney complained to Reierson that the CCSO's threat to remove him from

his long-standing position and its failure to engage in a truly interactive process constituted discrimination.

On September 23, 2020, Sergeant Abruscato and Sergeant Quimque informed Bozzi that beginning September 24, 2020, Bozzi was not permitted to wear his deputy sheriff uniform at work due to his ADA accommodations. (*Id.* ¶ 61.) Sergeant Abruscato and Sergeant Quimque also told Bozzi that he could no longer work at the front door main entrance security screening area because he was not allowed to wear his uniform. (*Id.*) Bozzi alleges in his Complaint that typically, only employees who are being disciplined or investigated are required to wear plain clothes. (*Id.* ¶ 62.) Bozzi's inability to wear his uniform thus embarrasses Bozzi because it signals to his co-workers that he is being disciplined, is under investigation, or has a disability. (*Id.* ¶ 63.)

More generally, Bozzi alleges that on a continuing and ongoing basis, Bozzi and other employees with ADA disabilities are prohibited from attending or participating in certain trainings, some of which are required for the deputy sheriff position, are prohibited from renewing certain certifications, are not permitted to work any available overtime, and are not permitted to bid for work in any lateral job positions (such as street units). (*Id.* ¶ 63.) Bozzi further alleges that "similarly situated non-disabled employees, did not have their conditions of employment changed under similar circumstances." (*Id.* ¶ 66.) Bozzi's superiors told him that if he were to return to work full duty without any ADA accommodations, the CCSO would lift the limitations imposed on him, he could participate in the same opportunities as other deputies who do not have ADA accommodations, and he could stay in his current job position. (*Id.* ¶ 67.)

Bozzi's Complaint states that the CCSO has "adopted and promulgated an official policy of discriminating against employees with disabilities, and/or has created a widespread practice or custom of discriminating against employees with disabilities, and/or the discriminating decisions

were made by an official with final policy making authority." (*Id.* ¶ 116.) Bozzi alleges that the allegedly discriminating decisions were made by Reierson at the direction of Sheriff Dart. (*Id.* ¶ 119.)

Following these events, Bozzi filed a charge of discrimination with the EEOC and the Illinois Department of Human Rights on October 5, 2020, alleging disability discrimination and retaliation. (*Id.* ¶ 17.) Bozzi received his notice of right to sue on or about March 23, 2022. (*Id.* ¶ 18.) Bozzi subsequently commenced this action on June 21, 2022 by filing a Complaint alleging ADA and constitutional violations. (Dkt. 1.) Defendants filed the instant motion to dismiss for failure to state a claim under the ADA or the Equal Protection Clause. (Dkt. 12.)

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**Discussion**

Bozzi brings disparate treatment, failure to accommodate, violation of confidentiality, retaliation, and interference claims under the ADA against the CCSO. (*Id.* ¶¶ 71–109.) Additionally, Bozzi brings § 1983 claims against all Defendants for violating the Equal Protection Clause of the Fourteenth Amendment by discriminating against him based on his disability. (*Id.* ¶¶ 110–23.) In response, Defendants seek dismissal of the Complaint in its entirety and argue that Bozzi has failed to state any claim for relief. (Dkt. 12.)

Before assessing Bozzi's claims below, the Court will address the preliminary issue of whether it should take judicial notice of the arbitrator's ruling on Bozzi's Step 3 grievance contained in the Expedited Opinion and Award attached to Defendants' motion to dismiss. (Dkt. 12 at 3; Dkt. 12-1.) The Court declines to do so, as Defendants have failed to articulate the impact of this ruling on Bozzi's case. Rather, Defendants merely assert that the Court may take judicial notice of the ruling and quote from the decision. (Dkt. 12 at 3.) While the Court may take judicial notice of the arbitrator's ruling denying Bozzi's grievance, Defendants have provided the Court with little context for how this ruling bears on Bozzi's claims. *See Fryman v. Atlas Fin. Holdings, Inc.*, 462 F. Supp. 3d 888, 895 (N.D. Ill. 2020) ("A court may generally take judicial notice of another court or agency's decision, but only for the limited purpose of establishing the fact of such a decision, not for the truth of the statements asserted in the decision."). The Court will therefore discuss Bozzi's claims without reference to the arbitrator's ruling.

I.      **Count I – ADA Disparate Treatment Claim**

The Court begins with Bozzi's disparate treatment claim. A plaintiff bringing a disparate treatment claim under the ADA "must allege that he is disabled within the meaning of the Act, is nevertheless qualified to perform the essential functions of the job either with or without

8

reasonable accommodation, and has suffered an adverse employment action because of his disability." *Elzeftawy v. Pernix Grp., Inc.*, 477 F. Supp. 3d 734, 763 (N.D. Ill. 2020) (quoting *Tate v. SCR Med. Transp.*, 809 F.3d 343, 345 (7th Cir. 2015)). The parties do not dispute that Bozzi has a disability within the meaning of the ADA. The CCSO instead argues that Bozzi has failed to adequately allege that he is "qualified to perform the essential functions of the job" and that he "has suffered an adverse employment action." (Dkt. 12 at 5–7, 8–9.)

### a. Essential Functions

The Court finds that Bozzi has sufficiently alleged that he is able to perform the essential functions of his position with a reasonable accommodation. Bozzi alleges that the CCSO granted him an ADA accommodation in June 2006 and that since 2009, he has worked two security assignments and the afternoon shift at the Rolling Meadows Courthouse. (Dkt. 1 ¶ 27.) Bozzi further alleges that he can complete all the essential job duties of his position as a deputy sheriff and that his doctor, after reviewing the essential job functions list created by Reierson, determined that Bozzi could perform the essential functions of his job. (*Id.* ¶¶ 29, 40); *see Nash v. Advoc. Aurora Health, Inc.*, No. 23 C 1474, 2023 WL 8718120, at *2 (N.D. Ill. Dec. 18, 2023) (finding plaintiff had met essential functions element by alleging her position and that Defendant had previously accommodated her disability while working). Other courts have found it plausible that a plaintiff can perform the essential functions of his or her job where the plaintiff has alleged that he or she previously worked for the defendant with an accommodation. *See, e.g.*, *Milsap v. City of Chicago*, No. 16C4202, 2018 WL 488270, at *1, 5 (N.D. Ill. Jan. 19, 2018) (finding that plaintiff with 17 years of work experience was qualified, despite needing an accommodation in recent years); *Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1173 (7th Cir. 2013) (finding that plaintiff had adequately pled that he was qualified where he had alleged he had 45 years of experience as a

welder and pipe fitter and had worked for defendant for over a month prior to being fired); *Kelley v. Chi. Transit Auth.*, No. 20-CV-02881, 2021 WL 698482 (N.D. Ill. Feb. 23, 2021) (finding plaintiff who alleged that he had worked as a CTA electrician for more than three years before a diabetic incident and then was cleared to work "without restrictions" by the "CTA's own medical provider" and eventually returned to work for the CTA as an electrician had adequately pled that he was qualified to perform essential functions of the job) (collecting cases).

Accordingly, the Court declines to follow the approach adopted in *Burke v. Dart* and urged by the CCSO. (*See* Dkt. 12 at 5) (citing No. 21-CV-3479, 2022 WL 4132489, at *3–4 (N.D. Ill. Sept. 12, 2022)). In *Burke*, the court held that a plaintiff must specify what the essential functions of his or her job are. 2022 WL 4132489, at *3–4. This Court notes, however, that the "essential-function inquiry is a factual question" that will likely be further disputed as the case and discovery unfold. *Brown v. Smith*, 827 F.3d 609, 613 (7th Cir. 2016). The Court is therefore persuaded that a plaintiff's allegations that he has performed his job with an accommodation for a substantial amount of time is sufficient to plead that he is an individual qualified to perform the essential functions of his job.

#### b. Adverse Employment Action

The CCSO's second argument is that Bozzi has failed to state an adverse employment action. (Dkt. 12 at 5–7.) An adverse employment action typically "falls into one of three categories: "(1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge." *Elzeftawyi*, 477 F. Supp. 3d at 764. To qualify as an adverse employment action, the act, however, must be "more than a

mere inconvenience or a change in job responsibilities." *Id.* (citing *Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 649 (7th Cir. 2011)).

The CCSO points out that Bozzi has not yet been transferred and argues that the rest of the alleged adverse employment actions—such as being denied the ability to wear his uniform— amount to mere inconvenience or dissatisfaction. (Dkt. 12 at 5–6.) The CCSO also argues that even if Bozzi's responsibilities have changed, the changes have not been significant enough to rise to the level of being adverse employment action within the meaning of Title VII. (*Id.* at 7.) In response, Bozzi contends that under *Hoffman v. Caterpillar*, a plaintiff who alleges an employment action specifically prohibited by the ADA does not need to independently demonstrate material adversity. (Dkt. 19 at 6–7) (citing 256 F.3d 568, 574–75 (7th Cir. 2001)). Bozzi further argues that *Hoffman*'s holding aside, he has alleged other adverse employment actions such that his claim should survive. (*Id.* at 7.)

The Court agrees that *Hoffman* is dispositive here. In *Hoffman*, the Seventh Circuit held that if a plaintiff alleges that he or she is being denied job training, then the plaintiff is not required to make a separate showing that the denial of training is materially adverse. *Hoffman*, 256 F.3d at 575–76. The Seventh Circuit's reasoning rested on the fact that the ADA itself specifically prohibits discrimination in "regard to . . . job training," unlike Title VII, 42 U.S.C. § 2000e–2(a), or the ADEA, 29 U.S.C. § 623(a)(1). *Id.* (citing 42 U.S.C. § 12112(a)). Bozzi alleges that he was denied job training opportunities on the grounds of his disability and thus, the *Hoffman* holding applies. *See also Emerick v. Wood River-Hartford Sch. Dist. No. 15*, No. 16-CV-0788-MJR-RJD, 2018 WL 11508494, *4 (S.D. Ill. Mar. 9, 2018) ("[Plaintiff] alleges restrictions on her ability to participate in training due to delayed operation of the stair tracker. This would be direct evidence of an issue explicitly enumerated—namely job training—so no showing of material adversity

would be required under *Hoffman*.").  In addition, Bozzi alleges that deputy sheriffs are required, as part of their position, to take the trainings that he and others with ADA accommodations are being denied. (Dkt. 1 ¶ 63.) Although under *Hoffman*, Bozzi is not required to demonstrate that denial of job training is materially adverse, this allegation suggests that the denial of job training harms Bozzi by rendering him unfit for his current and desired position.

The CCSO spills little ink over Bozzi's argument that the denial of job training constitutes an adverse employment action. Instead, the CCSO states, "[A]s admitted by Plaintiff, he has been able to attend training and re-certification," but that characterization is incomplete; Bozzi attended the in-service training, but he was told afterwards that his "requalification score would not be counted because he has ADA accommodations." (Dkt. 1 ¶ 56.) Additionally, Bozzi's allegations elsewhere in the Complaint state the exact opposite of the CCSO's assertion and enumerate other trainings that Bozzi was barred from attending. (*Id*. ¶ 63) ("On a continuing and ongoing basis, Plaintiff and other employees with ADA disabilities . . . are not allowed to participate in a mandatory civil process training course that all other deputies were required to do; are not allowed to train for a body camera or a taser as other deputies working security assignments have been required to do . . . .").

The Court also agrees that even if *Hoffman* did not apply, Bozzi has alleged other plausible adverse employment actions. Bozzi alleges that he and other deputies who work with ADA accommodations are unable to apply for overtime. (Dkt. 1 ¶¶ 63.) The CCSO attempts to minimize this allegation by pointing out that Bozzi does not allege that he sought to work overtime, but this allegation is unnecessary. (Dkt. 22 at 4.) The loss of the opportunity to request overtime implicates a reduction in "fringe benefits or other financial terms of employment," and thus the Court finds that it constitutes another adverse employment action.

Bozzi further alleges that the CCSO informed him that he would no longer be able to wear his uniform due to his ADA accommodations. Normally, the Court would agree with the CCSO that this allegation alone might amount to an "inconvenience," unactionable as an adverse employment action under the ADA. (*See* Dkt. 12 at 6) (citing *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) ("[N]ot everything that makes an employee unhappy is an actionable adverse action.")); *see also Washington v. McDonough*, No. 17-CV-9054, 2021 WL 1962420, at *4 (N.D. Ill. May 17, 2021) ("Not every run-of-the-mill work-related inconvenience or frustration rises to the level of an adverse employment action."). Bozzi, however, further alleges that the CCSO told him that because he was no longer able to wear his uniform, he could not work at the main entrance security screening area as he has done since 2006. (Dkt. 1 ¶ 61.) By forbidding him from wearing his uniform, the CCSO, in effect, changed his work responsibilities. Following discovery, this change in Bozzi's work duties may prove trivial or insignificant, and in fact, most of the cases cited by the CCSO were instances where the plaintiff ultimately failed to prove adverse employment action at the summary judgment stage. *See, e.g.*, *Smart v. Ball State Univ.*, 89 F.3d at 441 (appeal from grant of summary judgment); *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1009, 115 (7th Cir. 2001) (same); *Keen v. Merck Sharp & Dohme Corp.*, 819 F. App'x 423, 426 (7th Cir. 2020) (same); *Porter v. City of Chicago*, 700 F.3d 944, 954 (7th Cir. 2012) (same); *Washington v. McDonough*, 2021 WL 1962420, at *9 (grant of defendant's summary judgment motion). But at the pleading stage, it is plausible that this employment action was materially adverse. The CCSO's motion to dismiss Bozzi's disparate treatment claim is thus denied.

## II.    Count II – ADA Failure to Accommodate Claim

Bozzi's second claim is that the CCSO failed to accommodate his disability by prohibiting him from staying in his current position and by erecting barriers disqualifying Bozzi from his

current position or similar positions. (Dkt. 1 ¶ 77; Dkt. 19 at 8–9.) Bozzi further asserts that the CCSO's proposed accommodation—transfer to an alternate civilian position—is unreasonable because it would effectively be a demotion. (Dkt. 19 at 8–9.) A plaintiff bringing a failure to accommodate claim must demonstrate: "(1) the employee was a qualified individual with a disability; (2) the employer was aware of the disability; and (3) the employer failed to reasonably accommodate the disability." *Gray v. FleetPride, Inc.*, No. 21 C 4981, 2022 WL 10080811, at *6 (N.D. Ill. Oct. 7, 2022).

The first two elements of a failure to accommodate claim are met here. The Court has already addressed the CCSO's argument that Bozzi failed to allege that he can perform the essential functions of his position and concluded that Bozzi has done so. (Dkt. 12 at 8–9.) Bozzi has also alleged—and the parties do not dispute—that the CCSO was aware of Bozzi's disability. (Dkt. 1 ¶ 26.)

The CCSO's main contention is that Bozzi's claim is not ripe and should therefore be dismissed. (Dkt. 12 at 8.) The CCSO points out that Bozzi alleges that his accommodations have remained the same during the course of the interactive process. (*Id.*) Bozzi, in response, argues that the only reason the CCSO has not transferred Bozzi to an alternative civilian assignment is because he asserted his rights through his attorneys. (Dkt. 19 at 9.) Bozzi's position is that he "is not required to wait until [the CCSO] sees a clear path to effectuate the discriminatory employment practices against him." (*Id.*)

The Court concludes that Bozzi's failure to accommodate claim is sufficiently ripe. Both parties have essentially cited no caselaw for their dueling assertions that Bozzi's failure to accommodate claim is or is not judicially cognizable. (Dkt. 12 at 8; Dkt. 19 at 9.) The Court recognizes that Bozzi's case is somewhat unusual in that Bozzi is arguing that the CCSO's

imminent threat of withdrawal of his current accommodation amounts to a failure to accommodate. But Bozzi alleges that the CCSO rejected his ADA Request Packet and that on multiple occasions, the CCSO informed Bozzi that his current accommodation is not reasonable and that he cannot stay in his current position. (Dkt. 1 ¶¶ 35, 44, 51, 57.) In the statute of limitations context, courts have held that an employee's failure to accommodate claim accrues when the plaintiff's employer denies his accommodation request. *See, e.g.*, *Robinson v. Off. of the Cook Cnty. Recorder of Deeds*, No. 20-CV-2023, 2021 WL 1165100, at *9 (N.D. Ill. Mar. 26, 2021) ("[W]hen a plaintiff requests a particular accommodation, and the employer denies it, the clock starts ticking."); *Muckenfuss v. Tyson Fresh Meats, Inc*., 581 F. Supp. 3d 1114, 1119 (N.D. Ind. 2022) ("For a failure to accommodate claim, the clock starts to run when the plaintiff learns his request was denied.") (citing *Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 551–52 (7th Cir. 1996)). Even though Bozzi still maintains his current accommodations, the CCSO has already denied his accommodation request and repeatedly asserted that he cannot stay in his position with his ADA accommodations.

The CCSO cites only one case, *Reeves v. Jewel Food Stores, Inc.* in support of dismissing Bozzi's failure to accommodate claim, but *Reeves* emphasizes why further discovery—rather than dismissal—would be warranted here. 759 F.3d 698, 702 (7th Cir. 2014). In *Reeves*, the court affirmed summary judgment for the defendant on the plaintiff's failure to accommodate claim because the plaintiff failed to make "reasonable efforts to help the other party decide what reasonable accommodations are necessary" during the interactive process required under the ADA. *Id.* The CCSO likewise argues that Bozzi refused to engage in the interactive process. But this argument debatably indicates that Bozzi's claim is ripe. If there is a dispute as to what is a

reasonable accommodation or who was responsible for the breakdown in the parties' interactive process, the Court—or a jury—will be able to make these determinations.

Particularly in the absence of any caselaw cited by the parties suggesting otherwise, the Court thus finds that it can hear Bozzi's failure to accommodate claim at this time. If circumstances have changed since the Complaint was filed, and Bozzi needs to amend his Complaint to conform to new developments in the case, Bozzi may file a motion for leave to amend.

### III.     Count III – ADA Confidentiality

The Court now turns to Bozzi's claim that the CCSO violated § 12112 of the ADA. Bozzi claims that the CCSO violated this provision by discussing his disability within earshot of Bozzi's co-workers and supervisors and by prohibiting Bozzi from wearing his uniform or carrying a firearm, thereby "marking" him as an employee with a disability. The ADA limits the manner in which employers may ask employees about their medical condition and disclosure of such medical information once it has been received. 42 U.S.C. §§12112(d)(3)(B)–(C), (d)(4)(C). Specifically, employers cannot require a medical examination or ask whether the employee has a disability (or about the nature of his or her disability), "unless such examination or inquiry is shown to be job-related and consistent with business necessity." § 12112(d)(4)(A). Employers are, however, permitted to conduct voluntary medical examinations and to "make inquiries into the ability of an employee to perform job-related functions." § 12112(d)(4)(B).

Once an employer has obtained information about an employee's medical condition or history pursuant to § 12112(d)(4)(B), the employer must collect and maintain said information "on separate forms and in separate medical files" to be "treated as a confidential medical record," subject to three exceptions:

> (i) supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary

accommodations; (ii) first aid and safety personnel may be informed, when appropriate, if the disability might require emergency treatment; and (iii) government officials investigating compliance with this chapter shall be provided relevant information on request[.]

§ 12112(3)(B)(i)–(iii).

In support of dismissal, the CCSO argues that the CCSO was permitted to inquire about Bozzi's ADA accommodations under § 12112(d)(4)(A)–(B) because these inquiries were job-related. (Dkt. 12 at 10–11.) The CCSO further argues that the Complaint does not allege that the CCSO disclosed Bozzi's "medical records, what his disability is, or even what his accommodations are." (Dkt. 22 at 8.) Finally, the CCSO argues that if Bozzi's medical information was disclosed, any disclosures were exempted under § 12112(3)(B)(i)–(iii), as each of the purported disclosures was "either with human resources inquiring about his accommodations or involved supervisors who were also discussing facilitating his accommodations and/or potentially for emergency treatment purposes." (*Id.* at 9.)

The CCSO's first and third argument are inapposite as they do not address Bozzi's argument that his co-workers were able to overhear discussions about his ADA accommodations. Bozzi claims that the CCSO improperly disclosed Bozzi's medical information, but he does not contest that it was proper for the CCSO to inquire about his medical condition. (Dkt. 1 ¶¶ 47, 56; Dkt. 19 at 9–10.) The CCSO's argument that any wrongful disclosure falls under the exceptions listed in §§ 12112(d)(3)(B)(i)–(iii) essentially repackages its initial argument that the CCSO was justified in inquiring into Bozzi's medical condition. But §§ 12112(d)(3)(B)(i)–(iii) does not concern what kinds of personnel may inquire into an employee's medical information. The exceptions contained therein account for the fact that certain personnel in certain circumstances may need to hear an employee's otherwise confidential medical information. Based on the

Complaint, Bozzi's coworkers who were nearby when he was asked about his ADA accommodations are not covered by §§ 12112(d)(3)(B)(i)–(iii).

Having dispensed with two of the CCSO arguments, the Court will now evaluate whether Bozzi has adequately pled a violation of the ADA's confidentiality provision. To do so, a plaintiff must allege "that his employer obtained his medical information through employment-related medical examinations and inquiries, the information obtained through such means was disclosed by the employer rather than treated as confidential . . . and he suffered a tangible injury as a result." *Shoun v. Best Formed Plastics, Inc.*, 28 F. Supp. 3d 786, 789 (N.D. Ind. 2014); *Rivera v. City of N. Chicago*, No. 19 C 5701, 2021 WL 323794, at *3 (N.D. Ill. Feb. 1, 2021).

The Court concludes that Bozzi has stated a claim for violation of the ADA's confidentiality provision. It is plausible that the CCSO violated the provision when CCSO personnel discussed Bozzi's medical information in front of co-workers, who were unauthorized recipients of said information. This determination is a close call considering the CCSO's point that the Complaint gives scant details on the contents of the relevant conversations. The Complaint states that an Academy staff member approached Bozzi and discussed his ADA accommodations. (Dkt. 1 ¶ 56.) Without knowing the full details of this conversation, the Court makes the inference in Bozzi's favor that this mention of his accommodations implicated his medical condition. The Court, however, warns of one future difficulty Bozzi may face at the summary judgment stage: it is not clear from the Complaint whether Bozzi's co-workers heard the disclosure, and if no one heard the disclosure, there was, in fact, no disclosure.

The Court also finds that Bozzi has alleged a tangible injury. Among other things, Bozzi alleges that he suffered "great mental anguish, humiliation, degradation . . . emotional pain and suffering." (Dkt. 1 ¶ 98). This allegation is sufficient for meeting the tangible injury element. *See*

18

*Rivera*, 2021 WL 323794, at *5 (rejecting defendants' argument "that emotional distress cannot constitute a tangible injury for purposes of an ADA disclosure claim") (collecting cases).

Although the Court concludes that Bozzi has otherwise stated a claim for violation of the ADA's confidentiality provision, the Court finds that Bozzi's allegation that he was "marked" does not amount to a violation of § 12112(d)(4)(C). If there are employees who must wear plain clothes for reasons other than having a disability, then wearing plain clothes indicates nothing about the officer's medical condition. Even if wearing plain clothes carries a negative connotation, stigma and improper disclosure are distinct harms.

## IV.    Count IV – ADA Retaliation and Interference Claims

Next, Bozzi brings ADA retaliation and interference claims against the CCSO, which the Court will analyze in turn, beginning with Bozzi's retaliation claim. Bozzi asserts that the CCSO, in response to Bozzi's complaints of discrimination, intentionally retaliated against Bozzi by subjecting him to "disability discrimination by refusing to let him fulfill the functions of his position[,] by refusing to allow him to carry a gun or wear his uniform, denying him employment opportunities, denying him overtime, failing to continue to accommodate him, and denying him training." (Dkt. 1 ¶ 20.)

### a.   Retaliation Claim

To state a retaliation claim under the ADA, a plaintiff must allege: "he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two." *Guzman v. Brown Cnty.*, 884 F.3d 633, 642 (7th Cir. 2018). "Unlike the standard used in disparate treatment claims, an adverse employment action for purposes of a *retaliation* claim is simply one that would have dissuaded a reasonable worker from engaging in protected activities like filing a charge with the EEOC, requesting a reasonable

accommodation, or otherwise opposing disability discrimination." *Elzeftawy*, 477 F. Supp. 3d at 766 (emphasis in original).

The parties do not appear to dispute that Bozzi has alleged that "he engaged in a statutorily protected activity." The CCSO instead reiterates its argument that Bozzi has failed to allege an adverse employment action. (Dkt. 12 at 11.) The CCSO further argues that a plaintiff may not repackage his failure to accommodate claim as a retaliation claim under the ADA. (*Id.*) (citing *Koty v. Zaruba*, No. 15 C 2600, 2017 WL 4150684, at *7 (N.D. Ill. Sept. 19, 2017), *aff'd sub nom. Koty v. DuPage Cnty., Ill.*, 900 F.3d 515 (7th Cir. 2018)).

The Court finds that Bozzi has alleged adverse employment actions for the purposes of his retaliation claim. Bozzi alleges that he was prohibited from wearing his uniform and was therefore removed from the main entrance security screening area. (Dkt. 1 ¶¶ 60–61.) Bozzi further alleges that ordinarily, only employees "who are being disciplined or investigated" are required to wear plain clothes. (*Id.* ¶ 62.) As stated above, the Court finds that this action plausibly alleges an adverse employment action. Bozzi also alleges that he has been denied job training opportunities, which constitutes another adverse employment action. The Court, making all inferences in Bozzi's favor, finds that he adequately alleges he was denied training opportunities after his request for accommodations and his other complaints of discrimination. The Court thus finds that it is reasonable to infer that such consequences would dissuade a reasonable worker from complaining about disability discrimination.

Bozzi's other allegations are, however, less availing. Bozzi alleges that Reierson told him he would no longer be allowed to carry a firearm in 2017, but Bozzi's ADA Request Packet was completed in March 2018 and his first complaint (through his Union) was in 2020. (*Id.* ¶¶ 31, 41.) Accordingly, he cannot rely on this allegation as a basis for his retaliation claim.

Finally, as the CCSO argues, the Seventh Circuit does not recognize a plaintiff's ADA retaliation claim that is completely duplicative of his or her failure to accommodate claim. *Koty*, 2017 WL 4150684, at *7 (collecting cases). Therefore, the CCSO's purported failure to accommodate Bozzi's disability cannot be a basis for Bozzi's retaliation claim.

### b. Interference Claim

Turning to Bozzi's interference claim, Bozzi argues that the CCSO's "actions interfered with [Bozzi's] ability to work with accommodations as is protected by the ADA." (Dkt. 1 ¶ 108.) To state an ADA interference claim, a plaintiff must demonstrate that: "(1) [he] engaged in activity statutorily protected by the ADA; (2) [he] was engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; (3) the defendant[s] coerced, threatened, intimidated, or interfered on account of [his] protected activity; and (4) the defendant[s] were motivated by an intent to discriminate." *Summerland v. Exelon Generation Co*., 455 F. Supp. 3d 646, 663 (N.D. Ill. 2020) (quoting *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550–51 (7th Cir. 2017)).

The CCSO's main argument is that Bozzi failed to plead the third element of an ADA interference claim—that the CCSO coerced, threatened, intimidated, or interfered on account of Bozzi's protected activity—as illustrated by the significant difference between the factual allegations in Bozzi's Complaint and the facts in *Summerland v. Exelon Generation*. (Dkt. 22 at 7–8) (citing 455 F. Supp. 3d at 663) (finding threat to permanently bar plaintiff if she used FMLA or sick leave was "coercion, a threat, intimidation, or interference" for the purposes of an ADA interference claim).

The Court finds that Bozzi has sufficiently alleged that CCSO interfered with his right to a reasonable accommodation. Although the Court agrees that Bozzi's Complaint is far afield from

the facts in *Summerland*, the *Summerland* court's minimal discussion of the floor or ceiling of the allegations needed for an ADA interference claim renders that case unhelpful here. As described above, Bozzi was denied training opportunities and was subject to other adverse employment actions after his ADA Request Packet was rejected. Defendants also allegedly informed him "that if he were to return to working full duty without any ADA accommodations, the limitations imposed by Defendants would be lifted and he would then participate in the same opportunities as the other deputies working without ADA accommodations in his same job position." (Dkt. 1 ¶ 67.) The Court finds these allegations make it reasonable to infer that CCSO interfered with Bozzi's requests for accommodations under the ADA. CCSO's motion to dismiss his ADA interference claim is therefore denied.

## V.      Count V – Equal Protection Clause

Finally, the Court will evaluate Bozzi's § 1983 claim that Defendants violated the Equal Protection Clause of the Fourteenth Amendment by discriminating against him based on his disability. (Dkt. 1 ¶¶ 110–23.) Under the Equal Protection Clause of the Fourteenth Amendment, no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The Equal Protection Clause comes into play when regulations draw distinctions among people based on their membership in a particular class or when a person's fundamental right is denied. *Srail v. Vill. of Lisle, Ill.*, 588 F.3d 940, 943 (7th Cir. 2009). Courts apply different levels of scrutiny depending on the type of classification in question: suspect, quasi-suspect, or neither. *Haney v. Pritzker*, 563 F. Supp. 3d 840, 856 (N.D. Ill. 2021).

The United States Supreme Court has held that disability is neither a suspect nor quasi-suspect classification, and courts thus apply rational basis review to Equal Protection Clause claims based on disability. *Id.* at 865 (citing *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473

U.S. 432, 442 (1985)). Under rational review, a plaintiff must allege that the defendant "(1) intentionally treated [plaintiff] differently from others similarly situated; (2) this difference in treatment was caused by [plaintiff's] membership in the class to which he belongs; and (3) this different treatment was not rationally related to a legitimate state interest." *Id.* at 866 (quoting *Srail*, 588 F.3d at 943).

Defendants first argue that Bozzi is improperly bringing his ADA claims under the guise of § 1983. (Dkt. 12 at 13.) Defendants next contend that Bozzi's Equal Protection claim is barred because he is bringing a "class of one" claim, which is not cognizable in the public employment context. (*Id.* at 14) (citing *Enquist v. Oregon*, 553 U.S. 591, 594 (2008)). Defendants further argue that Bozzi has failed to state an adverse employment action, which is also required for Equal Protection claims based on disability discrimination. (Dkt. 22 at 11) (citing *Lavalais v. Vill. Of Melrose Park*, 734 F.3d 629, 635 (7th Cir. 2013)). Finally, Defendants argue that Bozzi's Equal Protection claim fails as it is subject to rational review, and there are conceivable rational bases for Defendants' actions. (*Id.* at 15; Dkt. 22 at 10–11.) Defendants also argue that other courts have found that requiring workers to confirm their ability to perform essential functions is rational. (Dkt. 22 at 10) (citing *Leibas v. Dart*, No. 19 C 7592, 2020 WL 6134992, at *7 (N.D. Ill. Oct. 19, 2020)).

The Court finds all of Defendants' arguments in support of dismissal at this stage unavailing. First, the court in *Leibas* already distinguished all the cases that Defendants cite in support of their argument that Bozzi is using § 1983 as an alternative vehicle for his ADA claims. 2020 WL 6134992, at *6. ("As the court reads their complaint, however, Plaintiffs are not using Section 1983 to enforce the ADA; they are instead asserting Equal Protection claims based on alleged differential treatment because of their status as disabled persons. . . . In the cases cited by Defendants, the plaintiffs were not using Section 1983 to assert constitutional claims."). Here, as

in *Leibas*, Bozzi is properly using § 1983 to bring a constitutional claim, and Defendants cite the same cases that defendants cited in *Leibas*. *Compare* (Dkt. 12 at 13) (citing *Alexander v. Chi. Park Dist.*, 773 F.2d 850, 856 (7th Cir. 1985); *Dargis v. Sheahan*, No. 02 C 6872, 2005 U.S. Dist. LEXIS 7468, at *30–31 (N.D. Ill. Mar. 25, 2005); *Tate v. Dart*, No. 17 C 8888, 2019 U.S. Dist. LEXIS 41341, at *6 (N.D. Ill. Mar. 14, 2019)), *with Leibas*, 2020 WL 6134992, at *6 (citing same).

Second, the Complaint plainly demonstrates that Bozzi is not bringing a "class of one" claim. (*See, e.g.*, Dkt. 1 ¶ 113) ("Defendants have deprived Plaintiff, *and others with disabilities*, of their rights to equal protection of law . . . by subjecting them to discrimination on the basis of *their* protected status as *persons with disabilities* . . . .") (emphasis added). Bozzi expressly seeks to bring an Equal Protection claim based on his disability. *See Stevens v. Ill. Dep't of Transp.*, 210 F.3d 732, 737–38 (7th Cir. 2000) ("Disabled individuals, like any class, are protected by the Equal Protection Clause of the Fourteenth Amendment).

Third, as stated above, *supra* Section I.b, the Court finds that Bozzi has suffered materially adverse employment actions due to disability discrimination, including being denied job training and being prohibited from wearing his work uniform.

Finally, the Court turns to Defendants' argument that Bozzi's Equal Protection claim cannot survive rational review. Rational basis review is satisfied "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Srail*, 588 F.3d at 946–47. The Seventh Circuit has, however, acknowledged the difficulty of squaring application of rational review and the 12(b)(6) standard and has reminded courts that "[t]he rational basis standard, of course, cannot defeat the plaintiff's benefit of the broad Rule 12(b)(6) standard." *Wroblewski v. City of Washburn*, 965 F.2d 452, 459 (7th Cir. 1992). At the pleading stage, a plaintiff bringing an Equal Protection claim subject to the deferential rational basis standard "must

allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Id.*

With these principles in mind, the Court finds that Bozzi's allegations have sufficiently called into question whether Defendants' actions were rationally related to a legitimate governmental purpose. The Court first acknowledges that Defendants' arguments that it was rational for the CCSO to confirm its workers' ability to perform essential functions, to remove someone who suffers from a panic disorder from a potentially crowded area, and to disallow said person from carrying a firearm are persuasive. Nevertheless, the Court ultimately finds the court's reasoning in *Leibas* applicable here and consequently concludes that Bozzi's factual allegations make it plausible to infer that Defendants' actions were irrational.

In *Leibas*, while the court found it reasonable for the CCSO to verify that its employees could perform essential functions, it denied the CCSO's motion to dismiss the Equal Protection claim because the paperwork requiring plaintiffs to specify their ability to perform essential job functions "[was] compiled without input from personnel having the most knowledge of essential job functions; appeared to include non-essential job functions; [was] not sensitive to the amount of time a typical employee would devote to any particular task; and [was] imposed on Plaintiffs for the first time only after they had been performing their job duties without incident for years." 2020 WL 6134992, at *8.

Likewise, the Court finds that Bozzi's allegations that he was able to work in his position and carry a firearm with the same accommodations for over a decade make it reasonable to infer that the CCSO's actions may have been arbitrary. Bozzi's allegations that his doctor cleared him to use a firearm and confirmed that he can complete all the essential functions of his job further suggest that the CCSO may have lacked a rational basis for prohibiting *any* employee with an

ADA accommodation from engaging in firearm training, regardless of the specific nature of their disability. The Court says nothing about whether Defendants can eventually show that the CCSO had legitimate reasons for its actions, but Defendants need to flesh out their justification at summary judgment. The Court will not dismiss Bozzi's Equal Protection claim on his Complaint alone. *See Pittsfield Dev., LLC v. City of Chicago*, No. 17 C 1951, 2017 WL 5891223 (N.D. Ill. Nov. 28, 2017) ("With *Wroblewski* in mind, the Court finds that it is ill-equipped at this juncture to dismiss a substantive due process claim [requiring rational basis review] based on hypothesized, unsubstantiated rational bases surmised entirely without the benefit of fact discovery."); *Wileman v. Sch. Dist. of Janesville*, No. 17-CV-531-JDP, 2018 WL 1401261, at *4 (W.D. Wis. Mar. 19, 2018) ("The court could reasonably infer that Wileman's absences were not tolerated because of irrational prejudice, rather than out of a legitimate concern for quality or efficiency. This is a factual question that is not appropriately resolved on the pleadings.").

In closing, the Court concludes that Bozzi has met the other two elements of an Equal Protection claim: Bozzi has alleged that he was intentionally treated differently from others similarly situated and this difference was due to his status as a person with a disability. Bozzi alleges that he and other CCSO employees with ADA disabilities are, among other things, being denied training opportunities and the ability to work any available overtime. Bozzi further alleges that similarly situated non-disabled employees are not subject to the same limitations and that Defendants informed him that if he were to work full duty without any ADA accommodations, he could participate in the same opportunities as other deputies who do not have ADA accommodations. *See Doe v. Bd. of Educ. of City of Chicago*, 611 F. Supp. 3d 516, 533 (N.D. Ill. 2020) ("Plaintiffs are not required to plead specific comparisons to similarly situated students."). Finally, Bozzi alleges that Defendants told him that these limitations were being imposed on

particular employees because they work with ADA accommodations. The Court finds that these allegations suffice for establishing that Defendants intentionally treated CCSO employees with disabilities differently, on the basis of their disabilities.

Defendants' motion to dismiss Bozzi's Equal Protection claim is therefore denied.

### a. Monell Claim

The Court lastly addresses whether Bozzi has stated a claim for municipal liability against the CCSO under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). "To state a *Monell* claim, a plaintiff must plead 'factual content that allows the court to draw the reasonable inference' that the municipality maintained a policy or custom that caused the alleged constitutional deprivation." *Castro v. Dart*, 483 F. Supp. 3d 564, 573 (N.D. Ill. 2020) (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). As discussed above, the Court has found that Bozzi plausibly alleges a constitutional deprivation.

"To satisfy *Monell*, [a plaintiff] must also allege facts that plausibly suggest the deprivation was caused by (1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by a municipal agent with final policy making authority." *Id.* (citation omitted). Bozzi asserts that the CCSO is subject to *Monell* liability based on either the second or third categories: Bozzi's constitutional deprivation was caused by a widespread, unwritten custom or practice or pursuant to a decision by Reierson, a municipal agent with final policy making authority. (Dkt. 19 at 12–13.)

Looking at Bozzi's Complaint as a whole, the Court finds that Bozzi has adequately stated a *Monell* claim against the CCSO. Defendants contend that Bozzi has not sufficiently alleged that Reierson established a policy with the express intent to discriminate against employees with disabilities. (Dkt. 22 at 11.) The Court has, however, already found that Bozzi has adequately

alleged that Defendants intentionally treated employees with disabilities in a disparate manner; the only remaining question is whether this treatment was enacted pursuant to a municipal policy or custom. The Court finds that Bozzi has adequately alleged that it was. Specifically, Bozzi alleges that he and another deputy were told not to bring their firearms to in-service training, and after Bozzi did so anyways, an Academy staff member told him that Human Resources stated that his score would not be counted due to his ADA accommodations. Further, as stated above, Bozzi alleges that he and other CCSO employees with ADA accommodations are not only being denied training opportunities, but also the ability to work any available overtime and that Defendants have told him that these limitations are being imposed on employees that work with ADA accommodations. The Court finds that these allegations make it plausible to infer that the CCSO itself has a policy or custom—whether a de facto widespread practice or a decision by Reierson—to treat CCSO employees with ADA accommodations differently on the basis of their disability. Defendants' motion to dismiss Bozzi's *Monell* claim against the CCSO is therefore denied as well.

### Conclusion

For the foregoing reasons, Defendants' motion to dismiss Bozzi's Complaint (Dkt. 12) is denied.

Dated: 6/28/24

Honorable Nancy L. Maldonado
U.S. District Judge

28